JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Michael Lopez | County of Berks, Warden Janine L. Quigley, Deputy Warden of Treatment, Tara Hamm (See attached Addendum listing all Defendants) |
| **(b)** County of Residence of First Listed Plaintiff    Lancaster<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant    Berks County<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>          THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>Harry J. Oxman, Esquire and Joseph S. Oxman, Esquire<br>111 S. Independence Mall E., Suite 740<br>Philadelphia, PA 19106 (215) 665-9999 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*       *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C.A. Section 1983 - Civil Rights

Brief description of cause:
Civil rights, personal injury and medical malpractice

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE                           DOCKET NUMBER

DATE
06/01/2016

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #       AMOUNT       APPLYING IFP       JUDGE       MAG. JUDGE

## ADDENDUM TO COVER SHEET
## COMPLETE LIST OF DEFENDANTS

1.  COUNTY OF BERKS, PA
    C/O BERKS COUNTY JAIL SYSTEM
    633 Court Street
    Reading, PA 19601

2.  WARDEN JANINE L. QUIGLEY
    C/O BERKS COUNTY JAIL SYSTEM
    1287 County Welfare Road
    Leesport, PA 19523

3.  DEPUTY WARDEN OF TREATMENT,
    TARA HAMM
    C/O BERKS COUNTY JAIL SYSTEM
    1287 County Welfare Road
    Leesport, PA 19523

4.  UNKNOWN DEPUTY WARDEN OF
    TREATMENT
    C/O BERKS COUNTY JAIL SYSTEM
    1287 County Welfare Road
    Leesport, PA 19523

5.  UNKNOWN CORRECTIONAL
    OFFICERS
    BERKS COUNTY JAIL SYSTEM
    1287 County Welfare Road
    Leesport, PA 19523

6.  PRIMECARE MEDICAL, INC.
    3940 Locust Lane
    Harrisburg, PA 17109

7.  JENALEE KENNEDY, M.A.
    c/o PrimeCare Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

9.  VICTORIA GESSEN, M.D.
    c/o PrimeCare Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

10. TARA L. RENNINGER, RN
    c/o PrimeCare Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

11. DAVID FEDERMAN
    c/o PrimeCare Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

12. JOHN BRIDGET, LPN
    c/o PrimeCare Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

13. JOHN BARKEROFSHIE, LPC
    c/o PrimeCare Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

14. UNKNOWN MEDICAL PROVIDERS
    EMPLOYED
    BY PRIMECARE MEDICAL, INC.
    c/o Prime Care Medical Inc.
    3940 Locust Lane
    Harrisburg, PA 17109

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _623 Main Street, Denver, Pennsylvania 17517_

Address of Defendant: _633 Court Street, Reading, PA 19601; 1287 County Welfare Road, Leesport, PA 19523; and 3940 Locust Lane, Harrisburg, PA 17109_

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes ☐    No ☒

Does this case involve multidistrict litigation possibilities?    Yes ☐    No ☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐    No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐    No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐    No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐    No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _Harry J. Oxman, Esquire_, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: _06/1/2016_ _____    _13316_
Attorney-at-Law    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _06/1/2016_ _____    _13316_
Attorney-at-Law    Attorney I.D.#

CIV. 609 (5/2012)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| MICHAEL O. LOPEZ<br>　　　　Plaintiff<br>　　vs. | : | Civil Action No. |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| COUNTY OF BERKS, PA, WARDEN JANINE L. QUIGLEY, | : | **PLAINTIFF, MICHAEL O. LOPEZ'S** |
| DEPUTY WARDEN OF TREATMENT, TARA HAMM, | : | **COMPLAINT IN CIVIL ACTION** |
| UNKNOWN DEPUTY WARDEN OF TREATMENT, | : | |
| UNKNOWN CORRECTIONAL OFFICERS BERKS COUNTY | : | |
| JAIL SYSTEM, PRIMECARE MEDICAL, INC., | : | |
| JENALEE KENNEDY, M.A., VICTORIA GESSEN, M.D., | : | |
| TARA L. RENNINGER, RN, DAVID FEDERMAN, | : | |
| JOHN BRIDGET, LPN, JOHN BARKEROFSHIE, LPC, and | : | |
| UNKNOWN MEDICAL PROVIDERS EMPLOYED | : | |
| 　　　　Defendants | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits.　　　　　　　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.　　　　　　　　　　　　　　　　　　　　　　　　　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court.  (See reverse side of this form for a detailed explanation of special
　　management cases.)　　　　　　　　　　　　　　　　　　　　　　　　　　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　( x )


| 　06/1/2016　 | 　Harry J. Oxman, Esquire　 | Michael O. Lopez　　　　 |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for Plaintiff** |
| 　(215) 665-9999　 | 　　(215) 569-8811　 | 　Oxmanh@ogklawyers.com　 |
| **Telephone** | **FAX Number** | **E-Mail Address** |


(Civ. 660) 10/02

OXMAN GOODSTADT KURITZ PC
BY:  HARRY OXMAN, ESQUIRE
IDENTIFICATION NO: 13116
The Bourse Building, Suite 740
111 South Independence Mall East
Philadelphia PA  19106
215-665-9999

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL O. LOPEZ<br>623 Main Street<br>Denver, PA 17517<br>    Plaintiff<br>  vs. | Civil Action No.<br><br><br>**JURY TRIAL DEMANDED** |
| COUNTY OF BERKS, PA<br>633 Court Street<br>Reading, PA 19601<br>  and<br>WARDEN JANINE L. QUIGLEY<br>C/O BERKS COUNTY JAIL SYSTEM<br>1287 County Welfare Road<br>Leesport, PA 19523<br>  and<br>DEPUTY WARDEN OF TREATMENT, TARA HAMM<br>C/O BERKS COUNTY JAIL SYSTEM<br>1287 County Welfare Road<br>Leesport, PA 19523<br>  and<br>UNKNOWN DEPUTY WARDEN OF TREATMENT<br>C/O BERKS COUNTY JAIL SYSTEM<br>1287 County Welfare Road<br>Leesport, PA 19523<br>  and<br>UNKNOWN CORRECTIONAL OFFICERS<br>BERKS COUNTY JAIL SYSTEM<br>1287 County Welfare Road<br>Leesport, PA 19523<br>  and<br>PRIMECARE MEDICAL, INC.<br>3940 Locust Lane<br>Harrisburg, PA 17109<br>  and<br>JENALEE KENNEDY, M.A.<br>c/o PrimeCare Medical Inc.<br>3940 Locust Lane<br>Harrisburg, PA 17109<br>  and | **PLAINTIFF, MICHAEL O. LOPEZ'S<br>COMPLAINT IN CIVIL ACTION** |

1

VICTORIA GESSEN, M.D. .                          :
c/o PrimeCare Medical Inc.                       :
3940 Locust Lane                                 :
Harrisburg, PA 17109                             :
  and                                  :
TARA L. RENNINGER, RN                            :
c/o PrimeCare Medical Inc.                       :
3940 Locust Lane                                 :
Harrisburg, PA 17109                             :
  and                                  :
DAVID FEDERMAN                                   :
c/o PrimeCare Medical Inc.                       :
3940 Locust Lane                                 :
Harrisburg, PA 17109                             :
  and                                  :
JOHN BRIDGET, LPN                                :
c/o PrimeCare Medical Inc.                       :
3940 Locust Lane                                 :
Harrisburg, PA 17109                             :
  and                                  :
JOHN BARKEROFSHIE, LPC                           :
c/o PrimeCare Medical Inc.                       :
3940 Locust Lane                                 :
Harrisburg, PA 17109                             :
  and                                  :
UNKNOWN MEDICAL PROVIDERS EMPLOYED               :
BY PRIMECARE MEDICAL, INC.                       :
c/o Prime Care Medical Inc.                      :
3940 Locust Lane                                 :
Harrisburg, PA 17109                             :
   Defendants                     :

Plaintiff, Michael O. Lopez, by way of this Complaint in Civil Action against defendants states:

## PARTIES

1. Plaintiff, Michael O. Lopez, is a citizen of the State of Pennsylvania residing at the above mentioned address.  Hereinafter Plaintiff, Michael O. Lopez shall be referred to as "Lopez".

2. Defendant, County of Berks, Pennsylvania, was and still is a domestic governmental entity duly organized and existing under and by virtue of the laws of the State of

2

Pennsylvania, with a principal place of business located at 633 Court Street, Reading, Pennsylvania 19601.  Hereinafter, County of Berks, Pennsylvania shall be referred to as "County".  At all times relevant hereto "County" operated the Berks County Jail System consisting of the Berks County Prison located at 1287 County Welfare Road, Leesport, Pennsylvania 19533. Hereinafter, Defendant Berks County Prison shall be referred to as "Prison".

3.      Defendant, Warden Janine L. Quigley, is and was at all times relevant hereto, an employee of "County" working at "Prison" in the capacity of its Warden.  Hereinafter, Defendant, Warden Janine L. Quigley, shall be referred to as "Warden".

4.      Defendant, Tara Hamm, is and was at all times relevant hereto, an employee of "County" working at "Prison" in the capacity of Deputy Warden of Treatment. Hereinafter, Defendant Deputy Warden Tara Hamm, shall be referred to as "Hamm".

5.      Defendant, Unknown Deputy Warden of Treatment, at all times relevant hereto, was an employee of "County" working at "Prison" in the capacity of Deputy Warden of Treatment.  Hereinafter, Defendant Unknown Deputy Warden of Treatment, shall be referred to as "Unknown Deputy Warden of Treatment".

6.      Defendants, Unknown Correctional Officer of "County", were at all times relevant hereto employees of "County" working at "Prison" in the capacity of Correctional Officers. Hereinafter, Defendants Unknown Correctional Officers shall be referred to as "Unknown Correctional Officers".

7.      Defendant, PrimeCare Medical, Inc., was and is a domestic corporation duly organized and existing under and by virtue of the laws of the State of Pennsylvania, with a

3

principal place of business located at the above mentioned address. Hereinafter Defendant, PrimeCare Medical, Inc., shall be referred to as "PrimeCare". At all times relevant hereto, "PrimeCare" provided medical services to inmates at "Prison" under a contract between "County" and "PrimeCare" calling for the providing of those services at "Prison" incorporating rules, regulations, and protocols for the providing of medical services to inmates during their incarceration at "Prison". "Lopez" is pursuing a professional liability claim against "PrimeCare".

8.    Defendant, Janelee Kennedy, M.A., is and was at all times relevant hereto an employee of "PrimeCare" providing medical services at "Prison" to inmates including "Lopez". Hereinafter, Defendant Janelee Kennedy, M.A., shall be referred to as "Kennedy". "Kennedy's" place of business is at the above listed address. "Lopez" is pursuing a professional liability claim against "Kennedy".

9.    Defendant, Tara Renninger, R.N., is and was at all times relevant hereto was an employee of "PrimeCare" providing medical services at "Prison" to inmates including "Lopez". Hereinafter, Defendant Tara Renninger, R.N., shall be referred to as "Renninger". "Renninger's" place of business is at the above listed address. "Lopez" is pursuing a professional liability claim against "Renninger".

10.    Defendant, David Federman, at all times relevant hereto, was an employee of "PrimeCare" providing medical services at "Prison" to inmates including "Lopez". Hereinafter, Defendant David Federman, shall be referred to as "Federman". "Federman's" place of business is at the above listed address. "Lopez" is pursuing a professional liability claim against "Federman".

4

11.     Defendant, John Bridget, LPN, at all times relevant hereto, was an employee of "PrimeCare" providing medical services at "Prison" to inmates including "Lopez". Hereinafter, Defendant John Bridget, LPN, shall be referred to as "Bridget". "Bridget's" place of business is at the above listed address. "Lopez" is pursuing a professional liability claim against "Bridget".

12.     Defendant, John Barkerofshie, LPC, at all times relevant hereto, was an employee of "PrimeCare" providing medical services at "Prison" to inmates including "Lopez". Hereinafter, Defendant John Barkerofshie, LPC, shall be referred to as "Barkerofshie". "Barkerofshie's" place of business is at the above listed address. "Lopez" is pursuing a professional liability claim against "Barkerofshie".

13.     Defendant, Victoria Gessen, M.D., is a physician licensed to practice medicine in the Commonwealth of Pennsylvania and at all times relevant hereto, was an employee of "PrimeCare" providing medical services at "Prison" to inmates including "Lopez". Hereinafter, Defendant Victoria Gessen, M.D., shall be referred to as "Gessen". "Gessen's" place of business is at the above listed address. "Lopez" is pursuing a professional liability claim against "Gessen".

14.     Defendant, Unknown Medical Providers Employed by PrimeCare Medical, Inc., at all times relevant hereto, were employees of "PrimeCare" providing medical services at "Prison" to inmates including "Lopez". Hereinafter, Defendants, Unknown Medical Providers Employed by PrimeCare Medical, Inc., shall be referred to as "Unknown Medical Providers". "Unknown Medical Providers's" place of business is at the above listed address. "Lopez" is pursuing a professional liability claim against "Unknown Medical Providers".

5

## JURISDICTION AND VENUE

15.     The Court has jurisdiction over this lawsuit because the action arises under the

Laws and Constitution of the United States, in particular the Fourteenth Amendment and 42

U.S.C.A. § 1983.  "Lopez", was deprived of his rights not to be subjected to cruel and unusual

punishment and while being subjected to these violations he suffered and sustained severe and

permanent injuries to his person.

16.     The Court has supplemental jurisdiction under 28 U.S.C § 1367 over "Lopez's",

claims arising under State law, including but not limited to violations of "Lopez's" State

Constitutional rights against defendants for, conspiracy, cruel and unusual punishment, willful

misconduct, and medical negligence because these claims are so related to the claims within the

Court's original jurisdiction that they form part of the same case or controversy under Article 3

of the United States Constitution.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as the claims at issue

arose in this judicial district.

## GENERAL ALLEGATIONS AGAINST DEFENDANTS

18.     The above paragraphs are repeated and incorporated herein by reference as if set

forth at length.

19.     Prior to June 2, 2014, "Lopez" had been incarcerated in the Pennsylvania State

Prison known as "SCI Dallas".  In early September of 2013, he was released from this facility

and assigned to the Wernersville Community Correction Center in Wernersville, Berks County,

Pennsylvania.  "Lope" remained at this facility until mid-May of 2014 having been a resident of

the facility in buildings 27, 30, and 18.  During his detention, at both of these facilities he was

6

treated by prison medical units for his opthomalogical condition of glaucoma with eye medications known as Timolol and Travatan.

20.    Mid May of 2014, he was released from Wernersville Community Correction Center and took up residence at 111 South 7th Street, Reading, Pennsylvania and brought with him the previously identified glaucoma eye medications which he took on a daily basis.

21.    On June 2, 2014, "Lopez" appeared in the office of his State Parole Officer and was notified at that time that he was being arrested on the charges of possession of contraband and controlled substance said charges emanating from an event occurring on January 24, 2014 while he was in custody in Building 27 at the Wernersville Community Correction Center.   This arrest was made by Pennsylvania State Trooper, Jeffrey Menet.

22.    After his arrest "Lopez" was eventually taken to "Prison" and at approximately 2:00 a.m. on June 3, 2014, the Intake Medical process began which was conducted by "Kennedy".   During this process "Lopez" informed "Kennedy" that he had been diagnosed with glaucoma and vision problems.   "Lopez" also informed "Kennedy" that he had received treatment with the medications Timolol and Travatan while at Wernersville Community Correction Center and that these medications were in his then apartment and could be obtained. "Kennedy" did not record this information and took no further action to secure the medication.

23.    During the Intake process, "Kennedy" was advised by "Lopez" that before being released to Wernersville Community Correction Center he had been incarcerated at SCI Dallas. At her request, "Lopez" signed a "PrimeCare" authorization permitting SCI Dallas to release all of his medical records pertaining to his glaucoma condition.   This authorization remained in the "PrimeCare" file of "Lopez" until an "Unknown PrimeCare Employee" faxed the request to SCI

7

Dallas apparently on July 14, 2014 which was not received by the medical department of SCI Dallas until July 24, 2014.

24.     No request was made for medical records of "Lopez" while he was incarcerated at the Wernersville Community Correction Center from early September of 2013 until mid May of 2014.

25.     No phone calls were made to either of the medical departments of SCI Dallas or Wernersville Community Correction Center seeking information about the glaucoma condition of "Lopez" and his treatment with medications.

26.     "Lopez" was assigned by "PrimeCare" a patient number of 2014-2775.

27.     At the completion of the Intake process "Lopez" and his records were evaluated by "Barkerofshie" it was determined that he would be assigned to a cell in the "Prison" population and any further evaluation would be on the "Block Clinic". "Lopez" was then placed in cell J-223. No request was made for medications for treatment of his chronic glaucoma condition. No request was made for a medical evaluation.

28.     On June 5, 2014, "Lopez" was seen by "Federman" for a sick call and during that call, "Lopez" complained about his glaucoma eye pain, and the need for his eye medications. "Federman" took no action with reference to any attempt to secure eye medications for "Lopez's" glaucoma condition or request a medical evaluation of his chronic glaucoma condition.

29.     On June 9, 2014, "Lopez" notified "PrimeCare" of a sick call request explaining that he had glaucoma and was requesting Timolol and Travatan eye drops for the treatment of his condition and that he had not received any drops since he had entered "Prison". He requested

8

help and noted that his eyes were hurting. This note was received on June 10, 2014 but no action was taken on June 9th or June 10th.

30. On June 11, 2014, "Bridget" responded to the sick call request of "Lopez" for his glaucoma eye medications. "Bridget" challenged "Lopez's" request for Timolol and Travatan medications stating that his use of those medications was not recorded in the Intake information. "Lopez" reiterated that he had been taking the medications while at Wernersville Community Correction Center and had received a supply of the medication which he took with him to his apartment upon release from Wernersville Community Correction Center in mid May of 2014. "Bridget" informed "Lopez" that he would attempt to verify the medication. No action was taken by "Bridget" or any other "Unknown PrimeCare Employee" to secure verification of "Lopez's" glaucoma medication use.

31. Subsequent to June 11, 2014, "Lopez" was seen by "Renninger" for the purpose of completing the 14 day physical evaluation. This evaluation consisted of a partial physical examination but did not include an examination of "Lopez's" eyes. "Renninger" did secure from "Lopez" information once again about his glaucoma condition, and that he been receiving treatment of it with the previously mention glaucoma medications. He advised that he had some of the medications at his home and requested that his roommate be contacted to bring them to "Prison". "Renninger" took no action with reference to securing glaucoma eye medication for "Lopez".

32. On June 16, 2014, at 9:07 a.m., "Gessen", the Medical Director of the Medical Unit of "PrimeCare" at "Prison" reviewed the medical chart of "Lopez" including his contacts with the previously mentioned "PrimeCare" employees and approved the work completed by

9

them. "Gessen" made no request for any medications to be administered to "Lopez" for his glaucoma nor did she conduct or order an appropriate eye examination. In addition, "Gessen" did not direct that other medical facilities be contacted for information about "Lopez's" glaucoma condition.

33.     Subsequent to June 16, 2014, "Lopez" continued to request to "Unknown Medical Providers" and "Unknown Correctional Officers" his need for the glaucoma eye medications, Timolol and Travatan without securing any response. "Lopez" did not receive any medications nor was he scheduled for an ophthalmological evaluation. These requests to "Unknown Medical Providers" and "Unknown Correctional Officers" continued through August 12, 2014.

34.     On June 18, 2014, an "Unknown Medical Provider" purportedly unsuccessfully attempted to contact the roommate of "Lopez". Following this alleged unsuccessful attempt no further action was taken.

35.     On July 9, 2014, "Lopez" filed a Berks County Jail System Inmate Grievance Form advising "County" that he had been incarcerated since June 3, 2014 and has repeatedly requested his medicated eye drops for the treatment of his glaucoma. He further stated that his repeated requests had produced from "PrimeCare" personnel, nurses, and doctors, a response that they would try to get medication from his home but that nothing had occurred, and further, that he was advised that he might be seeing a physician at some point in time in the future. This grievance response was addressed on July 11, 2014 by "Hamm" who essentially advised that no action would be taken until they could verify his medication prescriptions, but alternatively, he would be scheduled to see the eye doctor.

36.     From July 11, 2014 until August 11, 2014, "Lopez" received no glaucoma medication nor was he seen by a physician for an ophthalmological evaluation.

37.     Throughout the period from June 3, 2014, through August 11, 2014, the eye pain of "Lopez" increased and his glaucoma condition deteriorated.

38.     On August 11, 2014, an ophthalmological evaluation was done by an "Unknown PrimeCare Physician" who documented that "Lopez" had been without his medications for glaucoma for an excess of 2 plus months, and that his eye condition required an evaluation by a glaucoma specialist "ASAP". Between August 12th and August 21, 2014, "Lopez" did not receive any treatment with his eye medications, Timolol and Travatan.

39.     On August 12, 2014, a request for an urgent ophthalmological appointment was made by an unknown Healthcare provider and the evaluation was approved at that time by "Gessen" and Todd Haskins, R.N., this was scheduled to be completed on August 20, 2014 but, did not occur and was rescheduled for August 21, 2014 with Elliott Werner, M.D., a glaucoma specialists with Eye Consultants of Pennsylvania, P.C. At this evaluation Dr. Werner noted that "Lopez" had been on Timolol and Travatan for treatment of his glaucoma but had been without them since June 2, 2014. It was noted by Dr. Werner that the eye pressure in his eyes were very high and that the pain in the eyes was due to the failure to have his medications for approximately 80 days.

40.     On August 22, 2014, "Lopez" again filed a Grievance or Complaint about the fact that he had still not received his medication as directed by Dr. Werner and was advised that the medications had been ordered but not yet received. An order for the medications following the visit of Dr. Werner on August 21, 2014, had been written by "Gessen" for Timolol and

11

Travaprost the latter resulting in the determination by "Unknown PrimeCare Providers" that they were able to locate a bottle of Timolol but could not locate Travatan on August 22, 2014. Ultimately, the following day or two the Travatan was located and both drugs were dispensed.

41.     Thereafter, "Lopez" continued to receive the medications, Timolol and Travatan, and although not in accordance with the dispencing restricitions of Dr. Werner.  On August 29, 2014, at an office visit with Dr. Werner the correct dispensing method for these drugs was established and received by "Lopez".

42.     "Lopez" was seen at a followup evaluation by Dr. Werner in December of 2014. At this consultation the deterioration of his glaucoma was observed.

43.     "Lopez" was then transferred to SCI Mahanoy in January of 2015 from "Prison".

## COUNT I

### PLAINTIFF, MICHAEL O. LOPEZ vs DEFENDANT, COUNTY OF BERKS, PENNSYLVANIA, WARDEN JANINE L. QUIGLEY, DEPUTY WARDEN OF TREATMENT, TARA HAMM, AND UNKNOWN DEPUTY WARDEN OF TREATMENT DELIBERATE INDIFFERENCE TO THE NEED OF MEDICAL CARE AND THE DENIAL OF MEDICAL ATTENTION UNDER THE 14TH AMENDMENT

44.     The allegations contained previously are incorporated herein as though fully set forth at length.

45.     At all times relevant hereto, from June 3, 2014 until his transfer to SCI Mahanoy "Lopez" was a pre-trial detainee at "Prison".

46.     The "County", "Warden", "Hamm", and "Unknown Deputy Warden of Treatment", failed to enact policies, procedures, and/or protocols enabling pre-trial detainees to secure appropriate and timely medical care, said conduct consisting of the following:

12

(a)     Failing to provide prompt medical evaluation of inmates at the time of the Intake evaluation and immediately thereafter of their chronic medical conditions;

(b)     Failing to provide prompt medical evaluation of inmates at the time of the Intake evaluation and immediately thereafter to determine their need for medications to treat there chronic medical conditions;

(c)     Failing to have Intake medical evaluations which addresses the inmate's prior history for treatment of chronic medical conditions;

(d)     Failing to provide prompt dispensing of medications that inmates require for the treatment of their chronic medical conditions;

(e)     Prompt communication with prior institutions to secure information about an inmate's chronic medical conditions and the treatment received;

(f)     Failing to have a policy, procedure, and/or protocol requiring prompt and appropriate medical evaluations of inmate's chronic medical conditions and their treatment requirements;

(g)     Failing to have a policy, procedure, and/or protocol for regularly monitoring of inmate's medical conditions and their medical needs;

(h)     Failing to have a policy, procedure, and/or protocol requiring instruction of security and medical personnel on the recognition of an inmate's need for treatment of chronic medical conditions.

47.     The failures of "County", "Warden", "Hamm", and "Unknown Deputy Warden of Treatment", to enact the policies, procedures, and/or protocols constitute the denial to "Lopez" of

13

his constitutionally protected civil rights and reckless indifference to his right to medical

attention resulting in "Lopez" experiencing pain and suffering and deterioration of his chronic

medical condition glaucoma.

## COUNT II

### PLAINTIFF, MICHAEL O. LOPEZ vs. DEFENDANTS, COUNTY OF BERKS, PENNSYLVANIA, WARDEN JANINE L. QUIGLEY, DEPUTY WARDEN OF TREATMENT, TARA HAMM, AND UNKNOWN DEPUTY WARDEN OF TREATMENT
### FAILURE TO TRAIN, SUPERVISE, DISCIPLINE AND INSTITUTE POLICY AND PROCEDURES UNDER MONELL

48.     The allegations contained previously are incorporated herein as though fully set

forth at length.

49.     At all times relevant hereto from June 3, 2014 until his transfer to SCI Mahanoy,

"Lopez" was a pre-trial detainee at "Prison".

50.     At all times relevant hereto, "Unknown Correctional Officers" were employed by

"County" as Correctional Officers at "Prison" subject to training, supervision, and discipline by

"County" with regard to their activities as Correctional Officers at "Prison".

51.     At all times relevant hereto, "Unknown Correctional Officers" were acting as the

agents, servants, workman, employees, and/or ostensible agents of "County" and therefore their

acts in that capacity are contributable to "County".

52.     "County", "Warden", "Hamm", and "Unknown Deputy Warden of Treatment" as

a matter of policy and practice failed to train, supervise, and/or discipline "Unknown

Correctional Officers" who violated the rights of inmates including "Lopez" thus encouraging

14

these "Unknown Correctional Officers" to engage in the unlawful and actionable conduct previously described.

53.     "County", "Warden", "Hamm", and "Unknown Deputy Warden of Treatment", as a matter of policy and practice failed to train, supervise, and/or discipline "Unknown Correctional Officers" previously identified with respect to the Constitutional, Statutory and Departmental requirements of their authority and activity.

54.     "County", "Warden", "Hamm", and "Unknown Deputy Warden of Treatment", were on actual notice of a need to train, supervise, and/or discipline "Unknown Correctional Officers" prior to the conduct related to the incidents involving "Lopez" as a result of other incidents occurring in the past.

55.     "County", "Warden", "Hamm", and "Unknown Deputy Warden of Treatment", by their failure to train, supervise, and/or discipline caused the acts of deliberate indifference to the denial of medical attention under the 14th Amendment committed by the "Unknown Correctional Officers" resulting in "Lopez" experiencing pain and suffering and deterioration of his chronic medical condition glaucoma.

### COUNT III

**PLAINTIFF, MICHAEL O. LOPEZ vs DEFENDANTS,
UNKNOWN CORRECTIONAL OFFICERS AND EMPLOYEES OF
COUNTY OF BERKS, PENNSYLVANIA
DELIBERATE INDIFFERENCE TO THE NEED FOR MEDICAL CARE AND THE
DENIAL OF MEDICAL ATTENTION UNDER THE 14TH AMENDMENT**

56.     The allegations contained previously are incorporated herein as though fully set forth at length.

15

57.     The "Unknown Correctional Officers" at "Prison" between June 3, 2014 and the transfer of "Lopez" to SCI Mahanoy who provide security activities related to "Lopez" were the agents, servants, workman, employees, and/or ostensible agents of "County" acting within the course and scope of their employment and on the business of "County".

58.     At all times relevant hereto, "Lopez" was a pre-trial detainee at "Prison".

59.     At all times relevant between June 3, 2014 and the first medical examination undertaken of "Lopez" on August 12, 2014, "Unknown Correctional Officers" at "Prison" were aware that "Lopez" was suffering from the chronic medical condition of glaucoma and that he was receiving none of the eye medications that he required for his glaucoma treatment. Further, "Unknown Correctional Officers", were aware that "Lopez" had pain of the eyes and that his glaucoma condition was deteriorating.

60.     As the "Unknown Correctional Officers" interacted with "Lopez" between June 3, 2014 and August 12, 2014, despite their being aware of his lack of eye medication, eye pain, and deterioration of his glaucoma condition, they took no action in communicating or reporting his condition to proper personnel at "Prison".

61.     The conduct of "Unknown Correctional Officers" constitutes deliberate indifference to the medical needs of "Lopez" thus violating his civil rights under the 14th Amendment causing "Lopez" to experience pain and suffering and deterioration of his chronic medical condition glaucoma.


**COUNT IV**
**PLAINTIFF, MICHAEL O. LOPEZ vs DEFENDANT, PRIMECARE MEDICAL, INC.**
**DELIBERATE INDIFFERENCE TO THE NEED FOR MEDICAL CARE AND THE**
**DENIAL OF MEDICAL ATTENTION UNDER THE 14TH AMENDMENT**

16

62.     The allegations previously alleged are incorporated herein as though fully set forth at length.

63.     At all times relevant hereto, there existed a contract between "County" and "PrimeCare" whereby "PrimeCare" provided at "Prison" on behalf of "County" all "Prison" medical and mental health services to inmates including but limited to, Intake evaluations, mental health evaluations, substance abuse evaluations, medical treatment evaluations, and prompt medical treatment for inmates pre-existing medical and mental health conditions.

64.     The implementation of the previously mentioned contract between "County" and "PrimeCare" at "Prison" required that "PrimeCare" have in place polices, procedures, and/or protocols necessary to provide appropriate and timely medical evaluations and necessary medical treatment for pre-existing and chronic medical conditions for pre-trial detainee inmates at "Prison".  At all times relevant hereto, "Lopez" was a pre-trial detainee at "Prison".

65.     At all times relevant hereto, "PrimeCare" failed to enact policies, procedures, and/or protocols at "Prison" in order to meet the contract requirements as follows:

> (a)     Failing to provide prompt medical evaluation of inmates at the time of the Intake evaluation and immediately thereafter of their chronic medical conditions;
>
> (b)     Failing to provide prompt medical evaluation of inmates at the time of the Intake evaluation and immediately thereafter to determine their need for medications to treat there chronic medical conditions;
>
> (c)     Failing to have Intake medical evaluations which addresses the inmate's prior history for treatment of chronic medical conditions;

17

(d)     Failing to provide prompt dispensing of medications that inmates require for the treatment of their chronic medical conditions;

(e)     Prompt communication with prior institutions to secure information about an inmate's chronic medical conditions and the treatment received;

(f)     Failing to have a policy, procedure, and/or protocol requiring prompt and appropriate medical evaluations of inmate's chronic medical conditions and their treatment requirements;

(g)     Failing to have a policy, procedure, and/or protocol for regularly monitoring of inmate's medical conditions and their medical needs;

(h)     Failing to have a policy, procedure, and/or protocol requiring instruction of security and medical personnel on the recognition of an inmate's need for treatment of chronic medical conditions.

66.     The failures of "PrimeCare" to enact the previously described polices, procedures, and/or protocols constitutes the denial to "Lopez" of his constitutionally protected civil rights and reckless indifference to his right to medical attention resulting in "Lopez" experiencing pain and suffering and deterioration of his chronic medical condition glaucoma.


**COUNT V**
**PLAINTIFF, MICHAEL O. LOPEZ vs DEFENDANT, PRIMECARE MEDICAL, INC.**
**NEGLIGENCE, CARELESSNESS AND CORPORATE LIABILITY**

67.     The allegations previously alleged are incorporated herein as though fully set forth at length.

18

68.     At all times relevant hereto, there existed a contract between "County" and "PrimeCare" whereby "PrimeCare" provided at "Prison" on behalf of "County" all "Prison" medical and mental health services to inmates including but limited to, Intake evaluations, mental health evaluations, substance abuse evaluations, medical treatment evaluations, and prompt medical treatment for inmates pre-existing medical and mental health conditions.

69.     The implementation of the previously mentioned contract between "County" and "PrimeCare" at "Prison" required that "PrimeCare" have in place polices, procedures, and/or protocols necessary to provide appropriate and timely medical evaluations and necessary medical treatment for pre-existing and chronic medical conditions for pre-trial detainee inmates at "Prison".

70.     At all times relevant hereto, "Lopez" was a pre-trial detainee at "Prison".

71.     At all times relevant hereto, "Primecare" was negligent and careless in failing to enact policies, procedures, and/or protocols at "Prison" as follows:

    (a)     Failing to provide prompt medical evaluation of inmates at the time of the Intake evaluation and immediately thereafter of their chronic medical conditions;

    (b)     Failing to provide prompt medical evaluation of inmates at the time of the Intake evaluation and immediately thereafter to determine their need for medications to treat there chronic medical conditions;

    (c)     Failing to have Intake medical evaluations which addresses the inmate's prior history for treatment of chronic medical conditions;

19

(d)     Failing to provide prompt dispensing of medications that inmates require for the treatment of their chronic medical conditions;

(e)     Prompt communication with prior institutions to secure information about an inmate's chronic medical conditions and the treatment received;

(f)     Failing to have a policy, procedure, and/or protocol requiring prompt and appropriate medical evaluations of inmate's chronic medical conditions and their treatment requirements;

(g)     Failing to have a policy, procedure, and/or protocol for regularly monitoring of inmate's medical conditions and their medical needs;

(h)     Failing to have a policy, procedure, and/or protocol requiring instruction of security and medical personnel on the recognition of an inmate's need for treatment of chronic medical conditions.

72.     The negligence and carelessness of "PrimeCare" in failing to enact the previously described policies, procedures, and/or protocols caused "Lopez" to experience pain and suffering and deterioration of hi chronic medical condition glaucoma.


**COUNT VI**
**PLAINTIFF, MICHAEL O. LOPEZ vs DEFENDANT, PRIMECARE MEDICAL, INC.**
**FAILURE TO TRAIN, SUPERVISE, DISCIPLINE AND INSTITUTE POLICY**
**AND PROCEDURES UNDER MONELL**

73.     The allegations previously alleged are incorporated herein as though fully set forth at length.

74.     At all times relevant hereto "Lopez" was a pre-trial detainee at "Prison".

20

75.    At all times relevant hereto all of the named employees of "PrimeCare" and the
"Unknown Medical Providers" of "PrimeCare" were employed by "PrimeCare" at "Prison"
subject to training, supervision, and discipline by "PrimeCare" with regard to their activities as
health and medical care providers at "Prison".

76.    At all times relevant hereto, all of the named "PrimeCare" employees and the
"Unknown Healthcare Providers" of "PrimeCare" were acting as the agents, servants, workman,
employees, and/or ostensible agents of "PrimeCare" and, therefore, their acts in that capacity are
attributable to "PrimeCare".

77.    "PrimeCare", as a matter of policy and practice was under the obligation to train,
supervise, and/or discipline its employees at "Prison"; however, "PrimeCare" failed to train,
supervise, and/or discipline its employees who by their conducted  violated the rights of inmates
including "Lopez" thus encouraging these named "PrimeCare" employees and "Unknown
PrimeCare Health Providers" to engage in the unlawful and actionable conduct previously
described.

78.    "PrimeCare", as a matter of policy and practice failed to train, supervise, and/or
discipline the previously mentioned "PrimeCare" health care providers with  respect to the
Constitutional, Statutory and Departmental responsibilities of their conduct.

79.    "PrimeCare" was on actual notice of a need to train, supervise, and/or discipline
its named employees and unnamed health care providers prior to the treatment or failure to
provide treatment to "Lopez" as a result of other similar incidents occurring in the past.

80.    "PrimeCare's" failure to train, supervise, and/or discipline caused the acts of
deliberate indifference to the denial of medical attention under the the 14th Amendment committed

by the previously described "PrimeCare" personnel resulting in "Lopez" experiencing pain and

suffering and deterioration of his chronic medical condition glaucoma.

## COUNT VII
### PLAINTIFF, MICHAEL O. LOPEZ vs DEFENDANTS, JENALEE KENNEDY, M.A., DAVID FEDERMAN, TARA L. RENNINGER, RN, JOHN BRIDGET, LPN, JOHN BARKEROFSHIE, LPC, VICTORIA GESSEN, M.D., UNKNOWN MEDICAL PROVIDERS EMPLOYED BY PRIMECARE MEDICAL, INC. NEGLIGENCE AND CARELESSNESS

81.     The allegations previously alleged are incorporated herein as though fully set forth

at length.

82.     At all times relevant hereto, namely between June 2, 2014 and August 29, 2014,

"Kennedy", "Federman", "Renninger", "Bridget", "Barkerofshie", "Gessen", and "Unknown

Medical Providers" were the agents, servants, workman, employees, and/or ostensible agents of

"PrimeCare" acting within the course and scope of their employment and on the business of

"PrimeCare".

83.     At all times relevant hereto, namely, between June 3, 2014 and August 29, 2014,

"Kennedy", "Federman", "Renninger", "Bridget", "Barkerofshie", "Gessen", and "Unknown

Medical Providers" were fully aware of "Lopez's" chronic medical condition of glaucoma and

the consequences of them failing to treat his condition with his prescribed medication and that

the continued non use of medication would result in severely affecting his eye function.

84.     Between June 3, 2014 and August 29, 2014, "Lopez" suffered from continued eye

pain and vision deterioration along with elevated ocular pressures in his eyes.

22

85.    Between June 3, 2014 and August 29, 2014, "Kennedy", "Federman",

"Renninger", "Bridget", "Barkerofshie", "Gessen", and "Unknown Medical Providers" were

negligent and careless in their conduct directed to "Lopez" and this conduct consisted as follows:

(a)    Failing to prescribe and dispense glaucoma treatment medications, namely

Timolo and Travatan;

(b)    Failing to order a prompt medical ophthalmological evaluation of

"Lopez's" eyes and his chronic glaucoma condition;

(c)    Failing to secure timely and appropriate information related to treatment

received by "Lopez" at the medical department of other institutions in

which he had been incarcerated and received treatment;

(d)    Failing to recognize that the continued non-use of glaucoma eye

medication, namely Timolo and Travatan by "Lopez" during his

incarceration would cause pain and damage his vision by elevating his

ocular pressures;

(e)    Failing to conduct a full and complete medical evaluation including a

review of all of his medical records to which "Lopez" had provided access

to;

(f)    Failing to provide multiple daily observations, evaluations and testing of

"Lopez" between June 3, 2014 and August 29, 2014;

(g)    Failing to review internally with all medical personnel the state of

"Lopez's" condition with reference to his glaucoma and the need for the

medications, Timolo and Travatan, in order to provide him with the

23

needed medications until a full ophthalmological evaluation of his chronic

glaucoma condition could be consummated;

(h)     Failing to accept the statements of "Lopez" that he suffered from the

chronic condition of glaucoma for several years prior to June 3, 2014 and

was receiving treatment by use of the medications, Timolo and Travatan.

86.     The negligence and carelessness of "Kennedy", "Federman", "Renninger",

"Bridget", "Barkerofshie", "Gessen", and "Unknown Medical Providers" as previously alleged

resulted in "Lopez" experiencing pain and suffering and deterioration of his chronic medical

condition glaucoma.

## COUNT VIII
## PLAINTIFF, MICHAEL O. LOPEZ vs DEFENDANT, PRIMECARE MEDICAL, INC.
## NEGLIGENCE AND CARELESSNESS
## VICARIOUS LIABILITY

87.     The allegations previously alleged are incorporated herein as though fully set forth

at length.

88.     At all times relevant hereto, "Kennedy", "Federman", "Renninger", "Bridget",

"Barkerofshie", "Gessen", and "Unknown Medical Providers" were the agents, servants,

workman, employees, and/or ostensible agents of "PrimeCare" acting within the course and

scope of their employment and on the business of "PrimeCare".

89.     "PrimeCare" is vicariously liable for the acts or failures to act which constitutes

negligence and carelessness of "Kennedy", "Federman", "Renninger", "Bridget",

"Barkerofshie", "Gessen", and "Unknown Medical Providers" as previously alleged in Count

VII.

24

90.     The conduct of "PrimeCare" through its agents, servants, workman, employees, and/or ostensible agents as previously alleged resulted in "Lope" experiencing pain and suffering and deterioration of his chronic medical condition glaucoma.

## DAMAGES

91.     The allegations previously alleged are incorporated herein as though fully set forth at length.

92.     As a result of the conduct previously alleged as to all defendants, "Lopez",

and/or ostensible agents as previously alleged resulted in "Lope" experiencing pain and suffering and deterioration of his chronic medical condition glaucoma.

## DAMAGES

91.     The allegations contained previously are incorporated herein as though fully set forth at length.

92.     As a result of the conduct previously alleged as to all defendants, "Lopez", sustained deterioration of his glaucoma condition, loss of vision, nerve damage, all of which are which are permanent in nature, and a severe and permanent shock to his nervous system, as a result of which he has suffered and may, and probably will in the future, continue to suffer great pain, inconvenience, embarrassment, mental anguish, humiliation, and agony, and he has been and probably will be in the future hindered and prevented from performing or tending to his usual and daily duties to his great financial damage and loss.

93.     "Lopez" further avers that as a result of the foregoing, he has incurred medical, diagnostic testing, and medication expenses in an effort to treat and cure himself and will be required to incur the same expenses for an indefinite time in the future.

94.     "Lopez" further avers that as a result of his injuries he has suffered a loss of his earnings and an impairment of his earning capacity and that this impairment will continue permanently into the future.

95.     "Lopez" requests compensatory damages against all defendants and punitive damages as to the defendants in Counts I, III, IV and VI.

## ATTORNEY FEES

96.     It was necessary for "Lopez", to hire the under-signed attorney to file this lawsuit.

Upon judgment, "Lopez" is entitled to an award of attorney fees and costs under 42 U.S.C. §

1988 (b).

## PRAYER

97.     The above paragraphs are repeated and incorporated herein by reference as if set

forth in full.

**WHEREFORE**, Plaintiff, Michael O. Lopez, demands judgment against defendants

individually, jointly and/or in the alternative for compensatory damages, punitive damages,

attorney fees, interest and costs of suit in an amount in excess of $150,000.00 and such relief as

the Court may deem just and equitable.

## PLAINTIFFS DEMAND FOR JURY TRIAL

98.     Plaintiff, Michael O. Lopez, asserts his rights under the Seventh Amendment to

the U.S. Constitution and demands, in accordance with the Federal Rule 38, a trial by jury on all

issues

Respectfully submitted;

OXMAN GOODSTADT KURITZ, P.C.

Date: 6/1/16

HARRY J. OXMAN, ESQUIRE
JOSEPH S. OXMAN, ESQUIRE
Attorneys for Plaintiff, Michael O. Lopez

26

## **V E R I F I C A T I O N**

I, hereby verify that the facts set forth in the foregoing Pleadings are true and correct to the best of my information, knowledge and belief. All statements are founded upon reasonable belief. This verification is made subject to the penalties of 18 Pa. C. S. Section 4904, relating to unsworn falsification to authorities.

Michael O. Lopez

Dated: 6/1/16

## CERTIFICATE OF MERIT
## AS TO DEFENDANT, PRIMECARE MEDICAL, INC.

I, Harry J. Oxman, Esquire, attorney for Plaintiff, Michael O. Lopez, certify that an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this defendant in the treatment, practice or work that is the subject of the Complaint in Civil Action, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm suffered by the Plaintiff, Michael O. Lopez;

I, Harry J. Oxman, Esquire, attorney for Plaintiff, Michael O. Lopez, certify that the claim that this Defendant deviated from acceptable professional standards is also based upon allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of this Complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm suffered by the Plaintiff, Michael O. Lopez.

OXMAN GOODSTADT KURITZ, P.C.

Date: 6/1/16

BY: _____
HARRY J. OXMAN, ESQUIRE
Attorney for Plaintiff

**CERTIFICATE OF MERIT**
**AS TO DEFENDANTS, JENALEE KENNEDY, M.A., DAVID FEDERMAN,**
**TARA L. RENNINGER, RN, JOHN BRIDGET, LPN, JOHN BARKEROFSHIE, LPC,**
**VICTORIA GESSEN, M.D., UNKNOWN MEDICAL PROVIDERS EMPLOYED BY**
**PRIMECARE MEDICAL, INC.**

I, Harry J. Oxman, Esquire, attorney for Plaintiff, Michael O. Lopez, certify that an

appropriate licensed professional has supplied a written statement to the undersigned that there is

a basis to conclude that the care, skill or knowledge exercised or exhibited by these defendants in

the treatment, practice or work that is the subject of the Complaint in Civil Action, fell outside

acceptable professional standards and that such conduct was a cause in bringing about the harm

suffered by the Plaintiff, Michael O. Lopez;

OXMAN GOODSTADT KURITZ, P.C.

Date: 6|1|16

BY: _____
HARRY J. OXMAN, ESQUIRE
Attorney for Plaintiff